

**FILED**
**Feb 12, 2024**
**10:20 AM(CT)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **CHARLES HEPNER,** | ) | **Docket No. 2022-07-0138** |
| Employee, | ) | |
| v. | ) | |
| **MC PRODUCE, LLC, d/b/a MCCARTNEY** | ) | |
| **PRODUCE,** | ) | |
| Employer, | ) | **State File No. 13148-2021** |
| and | ) | |
| **ACCIDENT FUND INS.** | ) | |
| **CO. OF AMERICA,** | ) | |
| Carrier, | ) | |
| and | ) | **Judge Allen Phillips** |
| **TROY HALEY, as ADMINISTRATOR** | ) | |
| of the **BUREAU OF WORKERS'** | ) | |
| **COMPENSATION, SUBSEQUENT INJURY** | ) | |
| **& VOCATIONAL RECOVERY FUND.** | ) | |

---

### COMPENSATION ORDER

---

Mr. Hepner requested permanent disability benefits for neck and back injuries. He claimed permanent total disability, or alternatively entitlement to either extraordinary relief or increased benefits. MC contended Mr. Hepner only qualifies for increased benefits in a lesser amount than he claimed. The Court held a Compensation Hearing on February 1, 2024, and finds Mr. Hepner is entitled to increased benefits as described below.

### History of Claim

*Injury and treatment*

Mr. Hepner injured his neck and low back in February 2021 when moving a box of produce. He initially treated with authorized orthopedic surgeon Dr. Kyle Stephens.

Dr. Stephens diagnosed cervical and lumbar strains. He ordered MRIs, which revealed arthritic changes at multiple levels. Because of continued complaints, Dr.

1

Stephens referred Mr. Hepner for a neurological evaluation. MC then gave Mr. Hepner a panel of physicians, and he chose neurosurgeon Dr. Jacob Schwarz.

Dr. Schwarz evaluated only Mr. Hepner's neck. In July 2021, he described Mr. Hepner's pain as radiating into his upper and lower arms and that it was "significantly disabling." Mr. Hepner complained of dropping things and trouble writing and opening jars. Dr. Schwarz said the MRI showed loss of the normal curvature and disc bulges at the C4-5 and C5-6 levels. He gave Mr. Hepner the option of a two-level surgical fusion, but Mr. Hepner declined, since Dr. Schwarz could not guarantee it would alleviate his symptoms.

Mr. Hepner then returned to Dr. Stephens, who did not think surgery would help because he primarily had neck pain. He instead thought Mr. Hepner should have a functional capacity evaluation to determine appropriate work restrictions.

After the evaluation, Mr. Hepner told Dr. Stephens he was worse. He also disagreed with the examiner's statement that he did not fully cooperate. The examiner concluded the evaluation was valid and showed Mr. Hepner could work "medium" category jobs. Based on that, Dr. Stephens released Mr. Hepner to full duty at MC.

On September 28, 2021, Dr. Stephens placed Mr. Hepner at maximum medical improvement and assessed a 1% impairment rating for both the lumbar and cervical spine injuries, a total of 2% impairment. He cited a table from the *AMA Guides to the Evaluation of Permanent Impairment, 6th Ed.*

Mr. Hepner did not see Dr. Stephens again but returned to Dr. Schwarz in June 2022. He reported his pain had increased since his visit one year earlier. Notably, the neck pain radiated into both arms. Dr. Schwarz recommended repeat MRIs.

The lumbar MRI again showed disc bulges and stenosis at two levels. The cervical MRI showed some improvement compared to the first, but it still showed multilevel findings. Dr. Schwarz told Mr. Hepner he did not believe surgery would help and referred him for a pain management evaluation.

MC offered a panel of pain management providers, and Mr. Hepner saw one of them in November 2022. His history included neck pain that "radiate[d] to his right upper and lower arms as well as the thumb." The physician said that was consistent with a C6 radiculopathy, but the exam was not positive for radicular findings. The physician recommended an EMG to distinguish between radiculopathy and a peripheral nerve problem, but MC never authorized the EMG. Mr. Hepner received no further treatment with Dr. Schwarz. He later assessed a 25% impairment from a different category under the same *Guides* table Dr. Stephens used.

Mr. Hepner's attorney referred him to orthopedic surgeon Dr. James Wiesman for an independent medical evaluation of the lumbar spine. Dr. Wiesman diagnosed a sprain.

2

He did not evaluate the cervical spine but found loss of grip strength in the right hand, which he attributed to either a cervical spine or peripheral nerve problem.

Dr. Wiesman assessed a 3% impairment rating for the lumbar spine under the same *Guides* table used by Dr. Stephens. He arrived at that number based on a history of a strain (like Dr. Stephens), non-verifiable radicular complaints (like Dr. Stephens), and the similar findings in previous examinations. However, unlike Dr. Stephens, Dr. Wiesman documented the higher rating by applying various modifiers.

*Experts' depositions*

The parties deposed all three physicians. Dr. Stephens testified that he assigned 1% because of an absence of radicular complaints. However, Dr. Stephens did say Mr. Hepner complained of his right arm feeling weak and that he had multilevel degenerative disc disease. He made a neurological referral because he does not perform spinal surgery and said he would defer to Dr. Schwarz's rating because he was in a better position to give one.

Dr. Schwarz explained the basis for his 25% rating by quoting the *Guides* criteria of: "Alteration of multiple motion segment lesions with residual bilateral or multiple level radiculopathy at the clinically appropriate levels." He was "not sure how you would come up with a 1%," as that rating would be appropriate for a whiplash or strain. He testified Mr. Hepner had motion segment lesions, not a "soft tissue" condition. Further, Dr. Schwarz said Mr. Hepner could not return to his job at MC because of the lifting required, but he offered no opinion regarding permanent restrictions. He also stated his evaluation was for a surgical consultation, not treatment.

Dr. Wiesman testified that Dr. Stephens did not use the appropriate *Guides* formulas when calculating the lumbar spine rating, including the physical examination factor. He noted Dr. Stephens's records included no physical examination for the last "6, 7, 8 visits." When asked about the cervical spine, Dr. Wiesman said he did not specifically evaluate it, but thought a 1% rating "sounds low compared to Schwarz." He also said it appeared "Dr. Stephens, with respect, just did [the rating] very quickly," and he did not see "how you can get a one" given Mr. Hepner's "spine and history." Dr. Wiesman testified some restrictions were appropriate "at the time that [he saw Mr. Hepner]," but he did not call them permanent.

*Lay testimony and parties' positions*

At trial, Mr. Hepner testified he cannot work in his current condition. His work history consisted of jobs where he was required to lift 50 pounds, and he now feels he can lift only ten. He claimed he cannot sit or stand for more than 30 minutes. Mr. Hepner said his injuries affect his ability to exercise as he did before and his ability to do family activities. He believes he is totally disabled.

3

If not totally disabled, Mr. Hepner argued he should receive extraordinary benefits up to 275 weeks under Tennessee Code Annotated section 242(a)(2) (2023). He relied on Dr. Schwarz's rating, which exceeded 10%, and the statement that he could not perform the MC job. MC countered section 242(a)(2)(B) requires that a treating physician complete a Bureau form certifying an employee cannot return to his pre-injury job. Mr. Hepner did not produce that form.

As a third alternative, Mr. Hepner asserted he should receive increased benefits under section 207(3)(B) equal to a 27% rating multiplied by factors of 1.35 for no return to work, 1.2 because he is over age 40, and 1.45 for lack of diploma or the equivalent. He claimed a 27% rating is accurate when combining Dr. Schwarz's 25% and Dr. Wiesman's 3%.

As to his education, Mr. Hepner testified he completed the 11th grade but left school two months into his senior year for disciplinary reasons. He then enrolled in a home school program, where he completed and passed all requirements to graduate. However, he claimed that after giving his discovery deposition he realized he did not have a copy of his actual diploma, so he asked his mother for it. She did not have it because, as she explained to her son, she never paid the fee to receive it. For that reason, Mr. Hepner claimed he did not have a diploma or equivalent.

MC agreed Mr. Hepner would be entitled to the first two factors but not the third. It claimed Mr. Hepner wrote he had a high school diploma on his employment application. He admitted on cross-examination that he said the same in his discovery deposition and had never said otherwise until the lack of a diploma helps him.

Mr. Hepner argued the accurate impairment ratings were Drs. Schwarz's and Weisman's. Because he selected Dr. Schwarz from a panel, he said Dr. Schwarz's rating is presumed correct.[1] He also noted Dr. Stephens's deference to Dr. Schwarz's rating. As to the lumbar rating, he said Dr. Weisman's 3% was in line with the *Guides.*

MC countered that Dr. Schwarz incorrectly considered radiculopathy because Dr. Stephens said Mr. Hepner had no radicular pain, and the pain management records showed no evidence of it during examination. MC also argued Dr. Schwarz was not a treating physician according to his testimony. As to the lumbar rating, MC said Dr. Stephens's rating is correct. In sum, MC said the most accurate total rating was 2%, but if the Court combined Dr. Stephens's 1% cervical rating with Dr. Weisman's 3% lumbar rating, the maximum would be 4%.

---

[1] A physician's selection from a panel does not entitle his rating to a presumption of correctness in the same way selection provides a presumption regarding causation under section 102(12)(E). Rather, under section 204(k)(7), a presumption of correctness attaches to a rating given by a treating physician with no mention of panel selection.

Mr. Hepner additionally brought a claim against the Subsequent Injury Fund because he had a previous injury. However, he introduced no proof of that, and the Fund moved for dismissal. The Court granted the motion.

MC and Mr. Hepner agreed the combined ratings were either 2%, 4%, or 27% under the *Guides* combined values chart. They also agreed Mr. Hepner reached maximum medical improvement on September 28, 2021, and his weekly compensation rate is $463.60.

**Findings of Fact and Conclusions of Law**

The extent of an employee's disability is a question of fact that is determined by lay testimony and medical evidence. *Braden v. Mohawk Indus., Inc.*, 2022 TN Wrk. Comp. App. Bd. LEXIS 11, at *22 (Mar. 1, 2022). At this Compensation Hearing, Mr. Hepner must establish the extent of his disability by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6).

*Permanent disability*

Mr. Hepner first claimed he is permanently and totally disabled. The Court disagrees. An award of permanent total disability is appropriate only if an injury "totally incapacitates" an employee from working. *Id.* at -207(4)(B). The focus is on an employee's inability to work at any job, not inability to return to his previous position. *Satterfield v. Smoky Mtn. Home Health and Hospice*, 2023 TN Wrk. Comp. App. Bd. LEXIS 52, at *21 (Nov. 6, 2023).

Mr. Hepner testified that he knew of no jobs he could perform in his present condition. However, the medical evidence is otherwise. Dr. Schwarz testified Mr. Hepner could not return to the job at MC but expressed no opinion regarding permanent restrictions. Dr. Wiesman agreed Mr. Hepner should avoid certain activities when he saw him, but he testified "there are things [Mr. Hepner] could do." Dr. Stephens said Mr. Hepner could return to full duty. Based on the medical proof, Mr. Hepner did not establish that he is permanently and totally disabled.

Mr. Hepner next claimed he is entitled to extraordinary benefits under section 242(a)(2). Again, the Court disagrees. An employee claiming extraordinary benefits must provide a Bureau form completed by the treating physician certifying the employee can no longer perform his pre-injury occupation. No physician completed that form. Thus, Mr. Hepner did not show entitlement to extraordinary benefits.

Therefore, Mr. Hepner is entitled only to increased benefits, and the amount depends on the accurate impairment rating and applicability of the education multiplier.

To determine the accurate rating, the Court can consider the following about the experts: their qualifications, the circumstances of their examinations, the information

available to them, and the importance attached to that information by other experts. *Lentz v. Coca-Cola Consol., Inc.*, 2023 TN Wrk. Comp. App. Bd. LEXIS 34, at *10 (July 19, 2023).

Beginning with the cervical spine, the qualifications factor favors Dr. Schwarz. Dr. Stephens testified he recommended a neurological consultation because he does not perform neck surgery. Dr Schwarz does. Further, Dr. Stephens testified he would defer to Dr. Schwarz for a rating.

The circumstances of the examinations are equal. Both physicians saw Mr. Hepner on several occasions, and both offered treatment. The Court finds both were treating physicians whose ratings are presumed correct subject to rebuttal. Tenn. Code Ann. § 50-6-204(k)(7).[2] That finding removes the need to address rebuttal of either rating.

The available information was essentially the same, but Dr. Schwarz reviewed a second MRI which, like the first, showed structural abnormalities at multiple levels, a key component for a 25% rating under the *Guides*.

The final criterion, the importance of information to other experts, favors Dr. Schwarz. He explained his 25% rating, repeating the exact criteria supporting it during his deposition and explaining why a 1% rating is inappropriate. MC claimed an absence of radiculopathy undermined that rating. But the pain management records include a diagnosis of cervical radiculopathy, and Mr. Hepner reported radiating pain. Dr. Schwarz also recorded pain that radiated to the arms.

Dr. Wiesman testified that Dr. Stephen's 1% rating "sounds low," and it appeared Dr. Stephens did his rating "very quickly." Dr. Wiesman added he "cannot see how you get a one [percent rating]" given Mr. Hepner's spinal condition. He pointed out that Dr. Stephens did not use the *Guides* instructions.

Based on these findings, the evidence preponderates in favor of a 25% rating for the cervical spine injury.

Applying the same criteria to the lumbar spine, Drs. Stephens and Wiesman are both orthopedic surgeons and reviewed the same information. Dr. Stephens saw Mr. Hepner more often, but Dr. Wiesman pointed out that Dr. Stephens's records did not document an examination at many of the visits. Finally, Dr. Wiesman explained his methodology, while Dr. Stephens did not. Thus, the Court accredits Dr. Wiesman's 3% rating. When combining that with the 25% rating, the Court finds 27% is the accurate total rating.

---

[2] Dr. Schwarz's characterization of himself as only a surgical consult does not change that finding. *Cf. Owens v. Sitters, Etc.*, 2023 TN Wrk. Comp. App. Bd. LEXIS 55, at *17 (Nov. 17, 2023) (a doctor who said he was only giving a second opinion regarding causation was still considered a treating doctor when selected from a panel and authorized to treat).

*Increased benefits*

As to the education multiplier, Mr. Hepner testified he completed and passed all required classes of a home-school curriculum. He stated on his job application that he graduated high school and had a diploma. He had never said otherwise until after giving his deposition. Whether Mr. Hepner's mother ever paid a fee to receive an actual paper diploma is not the relevant question. Instead, does Mr. Hepner have the equivalency of a high school education? The Court finds he does and declines to apply the 1.45 multiplier.

Applying the other factors, Mr. Hepner's total award under section 207(3)(B) is $91,250.39 (450 weeks times 27% x 1.35 x 1.2 x $463.60).

He is also entitled to future medical benefits under section 204(a)(1)(A), and Dr. Stephens is designated the treating physician.

*Costs and fees*

Mr. Hepner filed a motion for discretionary costs supported by counsel's affidavit. An itemization included costs associated with Dr. Wiesman's testimony and a $150 charge by Dr. Stephens for completion of a C-32. MC agreed to all amounts except those related to Dr. Wiesman and the C-32 fee. Because the Court relied on Dr. Wiesman's opinion, the costs associated with obtaining his testimony are approved. The Court did not rely on Dr. Stephens's C-32, and its cost is denied.

Mr. Hepner's counsel submitted an affidavit supporting his attorney fee. Under section 226(a)(2)(B), the Court finds the fee is justified based on counsel's experience, reputation, time spent on the case, and the results obtained. *See* Tenn. S. Ct. R. 8, RPC 1.5 (2023).

**IT IS, THEREFORE, ORDERED** as follows:

1.  MC shall pay Mr. Hepner $91,250.39 for a 27% permanent partial disability with multipliers for not returning to work and being over age 40. The accrued benefits from September 28, 2021, the date of maximum medical improvement, to the date of trial, 122 weeks and two days, shall be paid in a lump sum of $56,689.00. After subtracting attorney's fees, the remaining 35 weeks and three days, or $16,311.31, shall be paid periodically. Counsel is entitled to a fee of 20% of the total award, or $18,250.08, which shall be paid in a lump sum.

2.  Mr. Hepner is entitled to future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A). Dr. Stephens is designated the authorized physician.

3.  Mr. Hepner's claim against the Subsequent Injury Fund is dismissed with prejudice to its refiling.

4. MC shall pay discretionary costs as detailed in Exhibit 16 of the Technical Record, less the C-32 fee, for a total of $2,781.85.

5. MC shall pay the $150 fee to the Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (2023) within five business days of this order becoming final, and for which execution might issue if necessary.

6. MC shall file a Statistical Data Form (SD-2) with the Court Clerk within five business days of the date this order becomes final.

7. Unless appealed, this order shall become final thirty days after entry.

**ENTERED February 12, 2024.**

*Allen Phillips*
_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Deposition of Dr. Kyle Stephens
2. Deposition of Dr. Jacob Schwarz
3. Deposition of Dr. James Wiesman
4. Physician panels
5. Mr. Hepner's MC employment application

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice-May 26, 2022
3. Scheduling Order
4. Order Adding Subsequent Injury Fund as a Party
5. Order on Subsequent Injury Fund Motion to Suspend Scheduling Order
6. Dispute Certification Notice-May 4, 2023
7. Agreed Order to Amend Name of Employer
8. Motion to Continue Compensation Hearing
9. Agreed Order of Continuance
10. Amened Scheduling Order-July 20, 2023
11. Order Continuing Compensation Hearing
12. Second Amended Scheduling Order
13. Employee's Witness and Exhibit List
14. Employee's Pre-Hearing Statement

15. Employee's Pre-Hearing Brief
16. Motion to Assess Discretionary Costs
17. Employer's Pre-Hearing Brief
18. Employer's Witness List
19. Employer's Exhibit List
20. Subsequent Injury Fund's Pre-Trial Statement
21. Order Allowing Appearance by Telephone
22. Post-Discovery Dispute Certification Notice
23. Motion to File Late-Filed Exhibit
24. Attorney Fee Affidavit

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on February 12, 2024.

| Name | Email | Service sent to: |
| --- | --- | --- |
| Charles L. Hicks, Employee's Attorney | X | larry@hickslawfirm.net<br>office@hickslawfirm.net<br>assistant@hickslawfirm.net |
| Gordon C. Aulgur, Employer's Attorney | X | gordon.aulgur@afgroup.com<br>samantha.gutierrez@afgroup.com |
| Art Wells, Subsequent Injury Fund's Attorney | X | art.wells@tn.gov |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**

9



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____  ☐ Motion Order filed on _____

☐ Compensation Order filed on_____  ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*